## James B. Gott, guardian v. Mary Jane Culp.

*Guardian's liability — Accounting — Investments — Claims for expenses — Interest.*

In a proceeding between a guardian and ward it is error for the judge to make remarks in the course of the trial favoring the notion that the guardian has been culpably lax in his duties and that relations and others have supported the ward by reason of his neglect, and intimating that the present proceedings can properly be made to deter other guardians from doing as this one did.

A guardian's discretion in respect to the boarding and schooling of a ward stands on a similar footing with a parents. He is not bound to prefer mere economy of cost to the welfare and comfort of the ward.

A guardian's discretion in his expenditures for the clothing of a female ward cannot usually be reviewed if they are not out of proportion to her social position, and are made in good faith and do not exceed the ward's means.

A guardian is not held responsible *ex post facto* on the ground, merely, that some other person might have done better; he cannot on an average be expected to be thoroughly versed in law or business; and honesty, kindness and a very ordinary skill in money matters are the most that can generally be required.

A guardian whose ward's estate is sufficient to furnish an income that will, with economy, maintain and educate her suitably, should not exceed the income, without adequate reason, though if circumstances justify it he may look at future and probable resources as well as at the present and actual income; and though it would be prudent to obtain leave to draw upon the principal, it is not absolutely necessary if the draft is one that ought to be made.

A guardian may properly retain enough of the money of his ward to secure the means of making all necessary outlays; and in investing he may wait until he can find safe investments in sums of reasonable amount, looking not merely to the value of the security, but to the promptness of the borrower.

A guardian intrusted with the investment of a ward's money should not be held for interest not actually received unless his delay to invest has been unreasonable; and he cannot be held for neglect beyond legal interest.

A guardian cannot be censured for honestly investing his ward's money in public securities or at the best legal interest which he finds readily obtainable; he represents the ward in taking securities, and he may turn them.

A guardian's compensation for the care of his ward is not an item of his account but is a matter for the consideration of the court which passes the accounts, and is not in any case to be determined by a jury.

A guardian's duties are personal and honorary and the position is not to be given or assumed with a view of profit; but in Michigan he is entitled to such reasonable compensation as the circumstances warrant, such as the size and character of the estate, the amount and kind of his services, the duration of the trust, the obligation to maintain an oversight of the person, etc.

A guardian's accounting is not a legal, but is an equitable proceeding involving not merely the ordinary items of debit and credit but considerations as to the propriety of charges and investments and the allowance of compensation, with which a jury cannot meddle. It cannot become a common law controversy on removal from the probate court.

Comp. L. § 5220 provides that on appeal from the probate to the circuit court, the latter shall proceed to trial according to the rules of law, and if there be any question of fact it may be submitted to a jury.

*Held* that this does not contemplate a general trial or a general verdict: the findings of the jury are to aid the court in determining questions that belong to its own equitable discretion.

Act 95 of 1873 requires a guardian to account on citation, but contemplates that he shall do so without; but the failure to do so, if not injurious, is not necessarily a cause of forfeiture.

Error to Washtenaw. Submitted Jan. 6–7. Decided Jan. 12.

Appeal from allowance of guardian's account in the probate court. The guardian brings error. Reversed.

*Albert Crane, Frazer & Hamilton* and *Edwin F. Conely* for plaintiff in error. A guardian is bound to such diligence and prudence as men exercise in ordinary affairs: *White v. Parker* (1850) 8 Barb. 48; *King v. Talbot* (1869) 40 N. Y. 76: he is charged only simple interest for a neglect to invest his ward's money: *Harland's Appeal* (1805) 5 Rawle 323; *Boynton v. Dyer* (1836) 18 Pick. 1; *Pennypacker's Appeal* (1862) 41 Penn. St. 494; he should not be charged with interest until the money has been in his hands a reasonable time: *Hooper v. Royster* (1810) 1 Munf. 119; *Dunscomb v. Dunscomb* (1815) 1 Johns. Ch. 508; *De Peyster v. Clarkson* (1828) 2 Wend. 77; *Armstrong v. Walkup* (1855) 12 Grat. 608; but he is not liable to be charged with any interest except that actually received, while his account is being settled: *Snyder v. Dietetrich* (1847) 5 Penn. St. 67; *Yoder's Appeal* (1863) 45 Penn. St. 394; *McElhenny's Appeal* (1863) 46 Penn. St. 347; *Mott Appeals* (1875) 26 N. J. Eq. 509; a trustee may charge for professional services: *Blake v. Pegram* (1872) 109 Mass. 541; *Lowrie's Appeal* (1856) 1 Grant's Cas. 373; so may an executor: *Wendell v. French* (1848) 19 N. H. 205; a probate court may allow an expenditure by a guardian in his ward's interest, of a portion of the principal of her money, even when made without a previous judicial order: *Wilkes v. Rogers* (1810) 6 Johns. 564; *In re Bostwick* (1819) 4 Johns Ch. 101; *Hayward v. Ellis* (1832) 13 Pick. 372; *Bruin v. Knott* (1845) 1 Phil. Ch. 572; *Shollenberger's*

*Appeal* (1853) 21 Penn. St. 337; *Smith's Appeal* (1858) 30 Penn. St. 397; *Worthington v. M'Craer* (1856) 23 Beav. 81; *Prince v. Hinly* (1859) 26 Beav. 634; *State v Clark* (1861) 16 Ind. 97; *Kendall v. May* (1865) 10 Allen 59; Schouler's Dom. Rel. 457–9; 3 Redf. Wills 453; *Bond v. Lockwood* (1864) 33 Ill. 212; *Jarret v. Andrews* (1870) 7 Bush. 311; omission to make an annual settlement is not such gross neglect as to be evidence of fraud : *Childress v Childress* (1873) 49 Ala. 237.

*Charles S. May*, for defendant in error. A guardian must see that the estate of his ward is made productive : *Worrell's Appeal* 23 Penn. St. 44; *Karr v. Karr* 6 Dana 3; *Pettus v. Sutton* 10 Rich. Eq. 356 ; *Owen v. Peebles* 42 Ala. 338; he should let the latters's money at the prevailing rate of interest : *Frost v. Winston* 32 Mo. 489; if he does not, he must make good the loss in his final accounting, *Hall v. Grovier* 25 Mich. 428; Reeve's Dom. Rel. 467; *Snavely v. Harkrader* 29 Grat. 112; he is presumed to have received interest on it : *Starrett v. Jameson* 29 Me. 504; a guardian should make such disbursements for his ward's support as are suitable : *Freeman v. Tucker* 20 Ga. 6; *Caldwell v. Young* 21 Tex. 800 ; he must not expend more than the income of the ward's estate for that purpose without judicial sanction : *Gilbert v. McEachen* 38 Miss. 469; *Johnston v. Haynes* 68 N. C. 514; if he wastes the estate he is entitled to no compensation : *McClellan's Appeal* 16 Penn. St. 110; *Reed v. Ryburn* 23 Ark. 47.

CAMPBELL, J.   Plaintiff in error was appointed by the probate court for the county of Washtenaw, in 1861, as guardian of defendant in error, then about six years old, her name being then Goodrich. In 1876 she married. Mr. Gott at the end of his trust filed his account, which was allowed as presented, no contest being made in the probate court over its correctness.   The ward, however, appealed to the circuit court for the county of Washtenaw, setting up four grounds of complaint, which were in substance that the guardian had

failed to keep money invested, had charged for excessive expenditures and made over-claims for compensation, and had in general disregarded his duty and thereby lost his right to compensation.

No issues were framed in the circuit court, but the appellant demanded a jury. The cause was in advance of any trial submitted to an auditor, Thomas Ninde, who formulated the account and reported it in accordance with the claim of the guardian. On the trial several questions were presented, all supposed to bear upon the grounds of appeal. By stipulation, the auditor's report was made conclusive as to moneys received and expended, leaving the questions open as to the reasonableness and correctness of the payments and charges.

The finding of the jury charged the guardian with nearly twice as much interest as he was shown by this report to have received, the difference being probably intended to include interest which might have been earned by more careful investments. The outlays for the ward and for trust purposes were allowed substantially as charged. His claim for compensation was left out almost entirely. The finding does not show the reasons for any of these results and is silent concerning facts.

As far as we can determine from a comparison of the report, which is part of the record, and the finding, in the light of the bill of exceptions, we infer that while all of the guardian's money expenditures were approved, he was regarded by the jury as having lost all claim to compensation by reason of fault, and as having subjected himself to a charge for interest because he did not invest promptly, and at the best rates.

The exceptions taken on the trial all bear upon the matters involved in these results, and may mostly be included under a few heads. They present the inquiry whether there was culpability in not accounting—whether the guardian could rightly expend more than the ward's income—whether he was not extravagant in allowing or making expenditures—whether he was culpable in the training of the ward—whether he was culpable in not making larger and more lucrative

investments—whether he was entitled to furnish goods himself, or to charge for legal services, and whether neglect in any of the duties of his trust deprived him of a right to compensation.   As these are all mixed up with each other in the record, and seem to have gone to the jury together, we shall not take up the exceptions separately when they can be dealt with together.   The conclusions at which we have arrived concerning the proper form of the litigation will make some questions unimportant.

Before going into the specific subjects we may properly refer to some points made on the language used by the court during the trial.   There is some reason to think that the course taken on the trial created a degree of impatience in the trial judge, which led him to rather sharp comments on facts and testimony, some of which we think had a necessary tendency to prejudice the jury.   It is impossible for an appellate court to appreciate all the surroundings of a trial, and we are bound to believe that the trial judge would not intentionally make any remark provoked or unprovoked by the methods of the trial, or by his view of the testimony, which would deprive a party of his rights.   We think, however, that remarks were made which could not fail to favor the notion that the guardian was culpably lax in his duties, and that relatives and others had supported the ward by reason of his neglect.   This, on any state of testimony, was going too far.   It was also error to intimate that proceedings in this case could properly be made to deter other guardians from doing as this guardian did.   Every case must stand on its own merits.   The effect of these suggestions was manifest from the verdict, which upon some points is not supported at all by proofs.

To appreciate the other questions a brief statement will be required.

The ward, when the guardian was appointed, was of tender years, and not enjoying any parent's care.   The guardian made arrangements to have her cared for in the family of an uncle and subsequently in that of an aunt.   The estate which she was then presumably to enjoy was not productive or

determined. It was about nine years before any considerable sum came from it into the guardian's hands. In 1871 he received from it $1640, which with a few scattering payments made earlier barely repaid the previous outlays for her board, clothing and other necessaries. After this the guardian received in 1873 from the same estate between four and five thousand dollars, and this was all the funds which at the time of his appointment, and for many years after, he had any right to expect would be received. The child, however, belonged by all her associations to intelligent and reputable people living in a comfortable way, and was entitled if possible to corresponding nurture. In 1873, by reason of the death of a relative in New York, an additional fund was received of about $9000. The death occurred a little earlier, and there were necessary delays in procuring the money, though no litigation. In 1873 the entire funds from all sources were realized.

For his services in going to New York and obtaining the possession of the fund there, the guardian in addition to his outlays charged $500 as extra compensation for his services as a lawyer in connection with his ordinary services as a guardian.

Up to 1871 he charged $25 a year for his services. After that year he claimed $300 a year.

When the ward became of proper age—about 15 or 16 years—he purchased a piano for her. During a portion of her minority he was in mercantile business, and furnished goods himself, instead of buying them. He also sent her to a boarding school in Canada. There was testimony introduced for the purpose of showing that he could have got board cheaper, and that she received more clothing and other supplies than some of the witnesses deemed necessary, and was not careful of them, and gave more or less away.

So far as her boarding and schooling expenses are concerned, we do not think there was anything which ought to have gone to the jury to impugn them. The law is entirely well settled that the guardian's discretion in such matters stands on a very similar footing with a parent's, and that he

is not compellable to prefer mere economy of cost to the welfare and comfort of his ward. He was justified in taking considerable pains to secure the care and oversight of a near relative, and in paying heed to her representations if he really regarded them as trustworthy. There is nothing tending to show any want of good faith in this matter, and the jury should not have been allowed to treat it as if there had been. The choice of a school stands on a very similar footing. He was also quite right in doing what he could to prevent the danger of such alienation of feeling as might impel the ward to resort to deceit or sly conduct. The uncontradicted testimony shows that the young lady was somewhat wayward, and was also lacking in careful management and preservation of her clothing and personal articles. The affirmative proof on this subject and of the efforts of the guardian and judge of probate was not explained or contradicted by Mrs. Culp, and there was an entire absence of any show of want of good faith. The presumption is not against the guardian, and in the present case the auditor's report was of itself *prima facie* evidence, apart from all other considerations.

The claim that the outlay for clothing and other advances was excessive demands a little more attention. The expenditures for such purposes, where the articles are not out of proportion to the ward's social position, if made in good faith, and if not exceeding the ward's means, cannot usually be held improper, under the same discretion before referred to. Aside from their limitation on account of income, upon which we shall remark presently, a *bona fide* discretion cannot be properly reviewed, unless in such extreme cases as seldom can arise with any but large estates.

Whilst it is just and necessary to require guardians to be careful, the law cannot and does not hold them responsible *ex post facto*, merely because some more prudent or sagacious person might have done better. The majority of guardians, especially of persons of moderate means, must be selected from friends or relatives who would take an interest in the child, and not upon mere financial and business principles.

Guardians on the average cannot be expected to be thoroughly versed in the niceties of law, or in the knowledge of business. Honesty and kindness, without more than a very ordinary skill in money matters, are about all that can usually be expected. It would lead to no good result to require such liabilities as would deter ordinary men from accepting such trusts, and would not only tend to keep out of the account the most essential elements of kindliness and sympathy, but would probably have an equal tendency to encourage sharpness in those who are treated as dealing at their peril.

A guardian whose ward's estate is sufficient to furnish an income that will with economy maintain and educate her suitably, should not exceed it without adequate reason. But in this country, while it is prudent to obtain leave in advance, it is not necessary, if circumstances justify the excess. But the rule is always to be applied with some discretion. The guardian is justified by the authorities in looking not merely at present and actual income but at future and probable resources. If the income is narrow he should also look to the future welfare and standing of his ward, which may in his eyes, as in those of a judicious parent, render it wise to secure desirable results by a sufficient outlay. In many if not in most cases, in this country, it is not possible to secure a regular and reliable revenue, which will not at times fail or be delayed. And when the infant's property is too small for the income to furnish reasonable nurture and support, the principal must necessarily be drawn upon.

Upon the present record it is not within our province to pass upon the facts. But it is proper to mention, that the expenses, apart from the guardian's charges, did not average per annum the ordinary legal interest upon the fund received in 1873, and still less on the whole fund received. Moreover during the years when some of the largest outlays became necessary, particularly the piano, the fund was all in perspective, and there was no income to speak of. During the fifteen years of guardianship, there were less than four, when it was possible to have had the principal fund earning inter-

est at all.  If this question should ever come up again for serious consideration, all of these matters would have to be looked at.  As the jury have found in the guardian's favor on this point, we need not refer to it further.

Upon the guardian's duty to invest, the findings on the record give us no definite *data*.  We need only say, therefore, that he should be held for interest not actually received, only when his delay has been unreasonable.  He may properly retain enough moneys to secure the means of making all necessary outlays, and he may wait until he can find safe investments in sums of reasonable amount.  He should look not merely to the value of the security but to the promptness of the borrower, and need not accept without reference to this.  For this reason public securities have always been held lawful.  He cannot be censured for honestly investing in these or on any legal interest where it is the best which he finds readily obtainable.  He cannot be held for neglect beyond seven per cent.  That is the rate imposed by law in the absence of contract.  The cases in which compound interest may be charged to a delinquent we need not now discuss.

The question of the guardian's compensation is not put in a satisfactory shape for full consideration.  There are, however, some things requiring attention.  It seems to be supposed there are some rules of law which on a given state of facts would fix it.  But this is a mistake.  The matter is one left to the consideration of the court passing the accounts, and the amount has nothing to do with the account as an item of it at all, and cannot in any case be considered by the jury.

By the old law a guardian could get no compensation whatever, but was merely protected in his legitimate expenditures.  The modern doctrine, which is recognized by our statutes, regards him as entitled to such reasonable compensation as the circumstances warrant.  Many elements may enter into this determination.  The size and character of the estate, the amount and kind of services rendered, the dura-

tion of the trust, the duties in the given case as involving oversight of the person to a greater or less degree, may all have their weight. All we can do in a case so imperfectly presented as this is, will be to refer, very generally, to the practice which seems most approved.

If a guardian is a professional man and renders professional services, there is no absolute right to demand pay for them on the same footing as a stranger, and yet in some cases it might be entirely proper. If the estate is large, and if the guardian is appointed chiefly for business purposes, there is no special reason why he should not be paid as a business man. But on the other hand in small or moderate estates, or where the helplessness of the ward and need of nurture and protection may be important elements in the choice, such a rule might be ruinous. Courts can never properly lose sight of the fact that primarily the duties are to be regarded as personal and honorary. Such offices are not to be given or assumed with a view to profit. The compensation must be proportioned not so much to the market or usual value of such services as to the ability of the ward to bear them. A guardian when he has assumed the trust must be as faithful in a small estate as in a large one, without reference to the compensation. He should be paid fairly if the estate will allow it to be done without disproportion or injury. But if it will not, then he must be satisfied with a smaller reward. Upon the present record, if the ward had no estate beyond what was managed by the guardian, we should not regard his claims as made for $300 a year, and $500 extra fees, as reasonable.

We have already hinted that this record is badly framed. It seems to have been assumed that the proceeding in the probate court was one which, when removed into the circuit court, would become substantially a common-law controversy. This is a great mistake, and the statute has been misconstrued. A guardian's accounting is an equitable and not a legal proceeding. It involves not merely the ordinary items of debit and credit, but also considerations as to the propriety of

charges and investments and as to the allowance of compensation, with which a jury cannot meddle. The statute does not in such cases contemplate a general trial or general verdict. It requires such matters of fact as are disputed to be submitted on proper issues to a jury. Comp. L. § 5220. But in such issues as the present, although the findings of the jury, on proper instructions, may be more conclusive than those on a feigned issue, nevertheless they serve no other purpose than to determine definitely such specific facts as, when found, will aid the court in determining those questions which belong to the equitable discretion of the court itself. Such questions of discretion in a case like this, might include the responsibility of the guardian for failure to keep investments, the necessity or propriety of exceeding the income, the rate of compensation, and some others. We are not called on, and it would not be proper, to anticipate what issues ought to be framed in this case. None whatever were drawn up, and the jury proceeded under the rulings to do what belonged to the court.

No ground of appeal pointed out any objection to the securities actually taken, definitely, if at all, and no question was made on the trial concerning them. But the final decree treated all the fund with one or two exceptions as uninvested. The guardian represents the ward in taking proper securities and has a right to turn them over. We*have no finding in this case to determine whether they were proper or not.

The failure to account annually, as provided for by the Laws of 1873, is not necessarily to be regarded as a cause of forfeiture. That law in terms only requires accounting on citation, but it undoubtedly contemplates that it should be done without. But it has never been held that such a failure, unless leading to injury, should be visited with serious penalties.

Some other matters were discussed which we need not dwell upon. The case will have to go back and definite issues should be made up before they are submitted again to be disposed of on the facts. There will be no occasion to

disturb the auditor's report which is based on the figures of the accounting.

The order of the circuit court must be reversed with costs, and the cause remanded for further action.

The other Justices concurred.