## ALICE J. MOYER v. DORSEY FLETCHER.

*Guardian's accounting—Ward's board, clothing and services—Interest on ward's funds—Costs.*

1. The guardian of an infant ward living in his family can charge her for board and clothing, though she be his niece, and the fact that another member of the family would have boarded her for nothing makes no difference, if the guardian, in the exercise of his best judgment for the ward's own good, has decided that she had better live in his family.

2. A guardian is to be charged legal interest only on funds of his ward in his keeping, unless there has been an agreement for a higher rate; and the fact that such funds have been lent occasionally at ten per cent. makes no difference where the guardian, though honest, is not accustomed to business and has innocently confused the ward's funds with his own and kept no accounts.

3. An infant ward living in the family of her guardian and cared for as a member of it, is not entitled to pay for household services.

4. A guardian must keep an account of receipts and disbursements as such, and if he fails to account for receipts he may properly be charged interest on the funds in his hands. If he is guilty of gross misconduct or fraud in his management interest against him may sometimes be made to run with annual or semi-annual rests. And if he cannot show what amount of interest he has received on the ward's funds he should be charged with legal interest on them from the time when they ought to have been invested.

5. Guardians can reap no personal benefit from the use of the ward's funds, any more than other trustees.

6. The burden of proof that a guardian has received a higher interest than the legal rate, upon his ward's money, is on those who represent the ward's interests on an accounting; and they must identify the instances in which such interest has been received.

7. Costs of appeals taken by a ward in reference to the guardian's accounting may be allowed to the guardian from the funds due the ward upon final judgment in favor of the guardian.

Error to Van Buren. (Mills, J.) April 10.—April 29.

Appeal in probate upon accounting between guardian and ward. The guardian brings error. Reversed.

*Geo. W. Lawton* and *Howard & Roos* for appellant. Interest on a guardian's account can only be charged at the legal rate; ten per cent. is chargeable only on contracts: *Gott v. Culp* 45 Mich. 265; *Bond v. Lockwood* 33 Ill. 212; a guardian should be credited with the value of the board and clothing of his ward: *Armstrong v. Walkup* 9 Gratt. 372; *Hooper v. Royster* 1 Munf. 128; *Latham v. Myers* 57 Ia. 519; *McDowell v. Caldwell* 10 Am. 635.

*Lester A. Tabor* and *Henry F. Severens* for appellee. A guardian would have no more legal right to appropriate to himself the increase of the ward's capital than he would to appropriate a part or the whole of the capital itself: see *Snyder v. Dieterich* 5 Penn. St. 87; *Yoder's Appeal* 45 Penn. St. 394; *Mott Appeals* 26 N. J. Eq. 509; *McElhenny's Appeal* 46 Penn. St. 347; when an infant is taken into a family, it is always presumed that neither its support nor its services are to be compensated except as the one compensates the other: *Thorp v. Bateman* 37 Mich. 68; *Bondie v. Bourassa* 46 Mich. 321; *Sword v. Keith* 31 Mich. 247; *Horton's Appeal* 3 Am. Prob. Rep. 151.

CHAMPLIN, J. This case involves the final account of Dorsey Fletcher as guardian of the person and estate of Alice J. Moyer, formerly Alice J. Fletcher. Mahlon Fletcher, who was a brother of Dorsey, died testate, June 8, 1867, leaving two children, Alice J., aged five, and Barbara, aged three years, his legatees. Zachariah Fletcher was appointed executor, and proceeded to administer the estate.

The defendant adopted Barbara as his own child, and on the third day of February, 1868, he was duly appointed guardian of the person and estate of the child Alice J., whom he also took into his own family to maintain, support and educate. He did not receive the estate belonging to his ward until June 7, 1869, when the executor turned over to him $1548.98, as belonging equally to Alice J. and Barbara, but subject to the payment of $75 for tombstones, which the will of Mahlon Fletcher provided should be obtained by his executor, and which it was arranged between the executor and defendant should be obtained by him and paid for out of said moneys. This left in the guardian's hands $736.99 as funds belonging to his ward, Alice J. Afterwards, and on April 22, 1873, he received as such guardian a further sum of $400 from the father of Dorsey Fletcher. The moneys so received by him he kept invested on interest, except a portion of the time when it was lying idle awaiting opportunity for investment. He paid and discharged the taxes assessed upon the property of his ward in his hands, and also paid for the services of the physician who attended her during such sickness as she had while under his guardianship.

The father of Alice J. was a farmer, as was also Dorsey Fletcher; and it was the desire of Alice's father that his brother Dorsey should care for Alice at his own home ; consequently he obtained the appointment of guardian over Alice, and took her into his family, and provided for her there until her marriage, which occurred February 28, 1882, furnishing her with board, lodging and clothing, as charged for in his final account, which charges were reasonable in amount, and said Alice was properly nursed when sick by the wife of the guardian, for which no charge was made. She was also properly instructed in labors and duties suitable to be understood by one in her rank and station ; was kept at school, and was fitted for and became a successful instructress of schools. After his ward had attained her majority, the guardian rendered his final account to the probate court of the county of Van Buren, in which he charged himself with the money received, belonging to his ward, and with

interest on the same at the rate of seven per cent. He credited himself with the money paid for taxes, school-books, doctors' bills, board, clothing, and a few other items of expense; and also with the legacy left in his hands by the grandfather of Alice, with the interest thereon, amounting to $686.09, which he had paid over to Alice, and concerning which there is no dispute. According to this statement of account, there was left in his hands as guardian the sum of $471.30, which amount he offered to pay to his ward. This was not satisfactory to the ward, and the guardian then, by leave of court, filed an amended account, which showed a balance in his hands due to his ward of $411.47. In this account the guardian charged himself with interest at the rate of seven per cent. per annum, which amounted to $727.02. Upon the hearing before the judge of probate, he charged the guardian with interest at the rate of ten per cent., and found the balance due to the ward to be $723.48, which he ordered paid within 60 days, and also the costs of the hearing to be taxed. From this order the ward appealed to the circuit court for the county of Van Buren, alleging several reasons. The only ones necessary to notice are the following:

(a) That the guardian charged his ward for board and clothing claimed to have been furnished her while she was living in his family and as a member thereof, she being his niece, and especially after she was fourteen years of age, while she was living and working in his family as one of its members.

(b) That the guardian has allowed her nothing for her services, while living and working in his family, after she was over fifteen years of age.

(c) That the guardian loaned his ward's money at ten per cent. interest, and received therefor ten per cent. compound interest, and only assumed to account therefor at seven per cent. simple interest.

The trial of the cause was heard before the circuit judge, who disallowed all charges for board and clothes, and charged the guardian interest at the rate of ten per cent. on the

amount received by him from the estate of Mahlon Fletcher, and allowed him two per cent. a year for his services as guardian and found a balance due from him to his ward of $1575.47, upon which a final judgment was rendered against the guardian, and an order entered certifying the amount to the probate court for further proceedings thereon. And the order further proceeds as follows : " And it further appearing to the said court that the said guardian of the said estate appealed to this court from the order of the probate court allowing his final account, and that on such appeal the amount found due from the guardian to the said Alice Moyer was largely increased from the amount appealed from ; therefore it is ordered that the said Alice Moyer do recover against the said Dorsey Fletcher her costs and charges aforesaid, both in this court and in the probate court to be taxed."

It may be remarked, in passing to the consideration of the merits, that the learned judge visited the costs of both courts upon the guardian upon a misapprehension of the facts disclosed by the record. As before stated, as appears from the record before us, it was the ward who appealed, and not the guardian ; although we think the guardian would have been fully justified in appealing from the order of the probate court. The substantial evidence is all returned in the bill of exceptions ; from which it appears, in addition to the facts above stated, that the guardian kept his ward in good society and suitably dressed therefor ; that her money was not kept separate from the funds of her sister, or of his own funds, but that all the money he controlled was used in common and loaned out as occasion permitted, sometimes at ten per cent. (and on some occasions compound interest at that rate was received), and sometimes the money was loaned at a less rate of interest, and sometimes it was idle in the bank ; that the guardian was not accustomed to keeping accounts, and kept none of any kind ; that when Alice became fourteen years of age he informed her that the law allowed her to choose her own guardian if she wished to make a choice, and that she declined to avail herself of that right. Upon the subject of charging her for board and clothing, the testimony was con-

flicting. The guardian produced evidence tending to show that he always intended to charge his ward for her support and clothing as much as the same were reasonably worth; and the ward introduced evidence tending to show that he did not intend to make such charge, and that her maternal grandmother offered to support her without charge.

The circuit judge made a written finding of facts, in which he says that the charges in the guardian's account for board and clothing are reasonable in amount, if they are proper charges against his ward, and in this we entirely agree; but the circuit judge came to the conclusion that these items were not proper charges to be made by the guardian. It was a proper and praiseworthy act for the guardian to take the child Alice into his own family, where she might have the companionship of her sister, who had been adopted by Mr. Fletcher, and where he might have the personal supervision of her nurture and education. These influences he was not obliged to yield to the maternal grandmother of the ward, although she might offer to support Alice without charge. There may have been, and probably were, reasons which operated upon his mind, and induced him, looking to the welfare of his ward, to refuse the offer. We cannot enter into speculations as to the reasons; but he was called upon to exercise his discretion under his obligations and duty as guardian, and such refusal affords no foundation for depriving him of all compensation for the support and clothing of his ward. He might, if he deemed it best, provide board and clothing to be furnished his ward in some other family than his own, and he would be justified in paying a reasonable price therefor, and charging the same in his final account. Had he done so, it is not presumed that any objection would have been made to the charge.

The law is not so harsh or unjust as to deprive a guardian of recompense for board and clothing when such necessaries are provided in his own family. Neither does the fact that the ward is a niece of the guardian change the law or at all affect his right to compensation; still less what he may have said of his intention not to charge therefor. Had he enter-

56 Mich.—33

tained such intention, it is reasonable to suppose that he would have adopted Alice as he did Barbara. The law entitles him to a reasonable compensation for the board and clothing furnished his ward, and the evidence shows, and the circuit judge finds, that his charges therefor are reasonable; and the account, so far as those items are concerned, should be allowed.

The ward was not entitled to be allowed anything for her services after she arrived at the age of fifteen years. Those services, whatever they may have been, are more than balanced by the nurture, care and instruction she received in the duties of domestic life in the family of the guardian. The circuit judge, in his findings, says: "It is very clear from the evidence that the guardian and his wife did maintain and educate the ward in a very kind, careful and praiseworthy manner; that they provided her with very comfortable clothing, sent her to school, had her properly educated in the duties of housekeeping, fitted her to teach school, and in short, provided for her in every respect in sickness and in health as kind parents for their own children; and I cannot but believe that the very bright, intelligent and lady-like appearance which the appellant exhibited in the trial was largely due to the satisfactory manner in which she had been brought up." We feel quite sure that, under such circumstances, there is no foundation for charging the guardian for the services of the ward.

It only remains to examine the item of interest allowed by the probate and circuit judges. They have charged the guardian with interest at the rate of ten per cent. There is no doubt that the guardian, like any other trustee, should not be permitted to reap a personal benefit from the manner in which he uses the funds intrusted to his charge. It is also his duty to keep an account of his receipts and disbursements; and where he fails to account for his receipts, it is a good reason for charging him interest on the funds in his hands; and when the court is satisfied that he has been guilty of gross misconduct or fraud in his management of the estate, he is sometimes charged with annual or semi-annual rests, which may result in compounding the interest.

There is no law which authorizes the charge; neither has it been the practice in the United States to charge the guardian with different rates of interest corresponding to different degrees of negligence or misconduct, as has been the practice in England. If the trustee cannot show what amount of interest he has received, he will be charged with legal interest from the time when investments ought to have been made. The legal rate, in the absence of contract for more, is seven per cent.; and if it is claimed that he received more, the burden of proof is upon those who assert the fact, and they must be able to produce the evidence to sustain the claim. In the record before us there is no proof of any particular instance, or of any particular amount, above seven per cent. which the guardian has received. The record says there was evidence tending to prove that he received in some instances ten per cent. interest on money loaned by him. This is not sufficient evidence to charge the guardian with ten per cent. interest on all the money in his hands.

In this case no fraud is claimed as having been committed by the guardian, and the only misconduct that can be alleged is the failure to keep the funds separate, and to keep and render a regular account of his receipts for interest. He managed her funds with, and as part of, his own money. His business does not appear to have been very extensive. He kept no books of account of his own matters, not being accustomed thereto. For these reasons he became liable to pay simple interest at the rate established by law as the legal rate, in the absence of special agreements. Perry on Trusts § 468. In some instances it is said that he received interest at ten per cent. upon money loaned by him; whether upon this or his own money it does not appear, and probably it is impossible to tell, as there was no separate account kept. His failure or neglect to keep any account of the interest received, does not appear to have been for any purpose to defraud or to conceal the amount of money received. He was annually paying out money for taxes and other expenses, and if he had annually taken out what he was entitled to receive for such expenses and for board and clothing, the whole income would

have been insufficient to pay the expenses. He has charged himself with seven per cent. interest upon the whole amount for the whole time, without taking out the annual expenditures; and in doing this we are convinced he has accorded to his ward all that, in equity or justice, was her due. In his eighth assignment of error he asks to be discharged as guardian on paying to the ward the sum justly her due, which he says he believes to be not in excess of $471.30, the amount he originally offered to pay her; and we think that this amount is liberal and all that was due to his ward upon the final account. He is entitled to his costs to be taxed in this Court and in the circuit and probate courts, which he may retain out of the above amount, and no costs are to be taxed against him in the probate court under the order made by that court in allowing his account.

Let it be so certified to the circuit and probate courts.

The other Justices concurred.