58  268
73  231
58  268
91  492

58  268
134  ²366
58  268
140  492

## URIAH CHUBB, GUARDIAN v. WILLIAM BRADLEY.

*Guardian's responsibility for funds of ward.*

1. In defense to an action purporting to be brought by a guardian, it may be shown that the guardianship has ceased; and if the plea does not set up such a defense an amendment which would permit such a showing should be allowed.

2. The proceeds of real estate belonging to a ward may be used by the guardian within proper bounds to enable the ward to be suitably brought up and educated; and such money may be turned over to the ward's adopted parents to aid them in its support, if necessary.

3. A guardian who has paid over the proceeds of the ward's estate to a suitable person to aid such person in supporting the ward cannot maintain an action at law against him to recover back the amount so paid after it has been reasonably expended for that purpose. Whether, in case of fraud or an unreasonable disproportion between the support and the funds, such an action could lie—Q.

4. A guardian's liability for the funds of his ward can seldom be passed on by a jury.

Error to Muskegon.   (Russell, J.)   Oct. 14.—Oct. 29.

CASE.   Defendant brings error.   Reversed.

*Maher & Felker* for appellant.   The guardian of a minor may make such contracts in respect to his ward and her estate as he sees fit, and will be personally bound thereby whether they are properly chargable against the estate or not: *Mason v. Caldwell* 10 Ill. 196 ; *United States v. Bender* 5 Cr. C. Ct. 620 ; *Thacher v. Dinsmore* 5 Mass. 300 ; *Forster v. Fuller* 6 Mass. 58 ; *Gibson v. Irby* 17 Tex. 173 ; *Stevenson v. Bruce* 10 Ind. 397 ; *Fressenden v. Jones* 7 Jones (N. C.) L. 14 ; *Poole v. Wilkinson* 42 Ga. 539 ; *Lewis v. Edwards* 44 Ind. 333 ; *Phelps v. Worcester* 11 N. H. 51 ; the same rule applies to the engagements made by the personal representatives of deceased persons : *McGoren v. Avery* 37 Mich. 120 ; *Ferrin v. Myrick* 41 N. Y. 315 ; *Austin v. Munro* 47 N. Y. 360 ; 1 Ch. Pl. 204–5 ; *Powell v. Graham* 7 Taunt. 584 ; *Jennings v. Newman* 4 Term 347 ; *Brigden v. Parkes*

2 B. & P. 424; *Trewinian v. Howell* Cro. Eliz. 91; *Hawkes v. Saunders* 1 Cowp. 289.

*Keating & Dickerman* for appellee. Actions have been allowed in the name of a guardian for injury to property of his ward in actual possession, or to which he has the right of possession (Tyler on Infancy 263); for non-payment of rent (*Pond v. Curtiss* 7 Wend. 45); for trespass on his ward's lands (*Truss v. Old* 6 Rand. 556; *Bacon v. Taylor* Kirby 368); for intermeddling with the rents and profits of real estate belonging to an infant ward (*Beecher v. Crouse* 19 Wend. 306); for injury to any property of the ward in actual possession (*Fuqua v. Hunt* 1 Ala. 197); or where he has the right of possession (*Sutherland v. Goff* 5 Port. 508; *Field v. Lucus* 21 Ga. 447); or on a note payable to himself, as guardian, though given for a debt due to the ward (*Jolliffe v. Higgins* 6 Munf. 3; *Baker v. Ormsby* 4 Scam. 325; *Thacher v. Dinsmore* 5 Mass. 299); or on his express contract touching the ward's estate (*Thomas v. Bennett* 56 Barb. 197); a guardian is to be sued in person upon notes executed by him in his official capacity: 1 Pars. N. & B. 89, 90; *Thacher v. Dinsmore* 5 Mass. 299; and may foreclose a mortgage in his name as guardian that has been so assigned to him, or assign the same: *Livingston v. Jones* Har. Ch. 165; *Field v. Schieffelin* 7 Johns. Ch. 150; *Kinney v. Harrett* 46 Mich. 87; in a suit brought by A. B., agent, the allegation of agency will be regarded as surplusage: *Buffun v. Chadwick* 8 Mass. 103; *Bond v. Betts* Breese (Ill.) 158; *Clark v. Lowe* 15 Mass. 476; superfluous allegations in a declaration may be rejected and treated as if they had not been there: *Hoyt v. Seeley* 18 Conn. 353; the term "guardian" added to the name of the complainant in foreclosure, is merely descriptive: *Vary v. Chatterton* 50 Mich. 541; in a suit against A. B., executor, etc., where a personal liability of A. B. is proved, the word "executor" may be striken out as surplusage: *Geddis v. Irvine* 5 Penn. St. 508; where a plaintiff is entitled to recover in his own right, if he describes himself as administrator, it will be treated as surplusage: *Commonwealth v. Haffey* 6 Penn. St. 348; where one sues describing himself as executor, if the justice of the case requires, it will be treated as surplusage: *Grew v. Burditt* 9 Pick. 265; *Talmage v. Chapel* 16 Mass. 71.

CAMPBELL, J. Plaintiff was in 1866 made guardian of three young children of Jonathan Bonner, deceased, Emma,

the youngest, having been born April 25, 1865. Their only estate was a pension of a small amount and certain land afterwards sold for $2000. Their mother remarried after her husband's death and died in 1867, when Emma was two years old, and her brother Charles was six. Upon the mother's death these two children had to be looked after, and were placed in defendant's charge, Emma in 1868, and her brother in 1870. The guardian and their uncle desired to have defendant and his wife, who were childless, adopt them. Defendant hesitated about it on account of his small means at that time, as not able to support them. It was then agreed, as the testimony shows, that defendant should have their property to help him support them. Accordingly the pension money was paid and the land was also subsequently sold, and the proceeds, with the pension money, left in his hands. He brought up the children, and the testimony indicates that Emma was treated very generously, and furnished with such an education, and such clothing and ornaments, musical instruments, the use of horse and carriage and other things as put her on an equality with other young ladies, and were, in part at least, such as defendant could not well have afforded out of his own means. In 1882 Emma, being about 17 years old, was married to Fred. N. Edie, to whom defendant had some objection from his having been employed in a business he did not approve. Thereupon she attempted to have her husband appointed her guardian, and letters seem to have been issued to him, but apparently Chubb was not discharged. She cited Chubb to render his accounts, which he did, and showed the money paid over to defendant. An order seems to have been made charging him with the amount so paid over, but, as in our opinion it could have no bearing on this controversy, we need not regard it. Chubb then, as guardian, brought this suit (or it was brought in his name) to recover back the money as still belonging to the estate, and paid over and kept without consideration, although there had been a formal discharge given for it. The court below held the pension money properly retained by defendant, but gave judgment for the proceeds of the lands.

Some questions arose early in the trial as to how far testimony could be introduced to show that the guardianship had been changed,—it being objected that no such defense was pleaded. The court below shut it out. If we rightly understand the record, no lawful change of guardians was actually made. But if it had been, we have no doubt it was proper to show it. The action was on behalf of the guardian as representing the estate, for money had and received, and anything which showed an absence of indebtedness to plaintiff should be a good defense. We see no occasion for a plea, but had it become necessary it would have been unjust not to permit any necessary amendment.

As we view the record, the only real question is whether Bradley should repay any or all of the money received by him as the proceeds of the land. The court below held that having adopted the children, defendant was compelled to support them himself unless there was an agreement made prior to the adoption and as a consideration for it, and that any money not paid under such a prior arrangement could be recovered back. The charge also seems to confine the amount that could be so agreed upon to the pension money and the rent of the farm, excluding the proceeds of its sale.

There is no rule of law, in our judgment, which can sustain these holdings. If it is thought reasonable and proper, in order to give a child more advantages than the income of the estate will furnish, there is no inflexible rule which will prevent resorting to the use of the principal, and it may be true economy and duty to do so. Our statutes provide that the body of a trust fund may in proper cases, be so applied, and in *Gott v. Culp* 45 Mich. 265, this same doctrine was applied to the ward's estate in the hands of the guardian. If children have property separate from that of parents, natural or adopted, although it may fairly be expected that the parents shall bring them up if they can, at their own expense, in conformity with their means, yet it would be entirely unreasonable to refuse to give them better facilities than the parents themselves could afford, if parents and guardians should think it advisable for them, within reasonable

limits.   As between guardians and those to whom they pay money for that purpose, we do not think an action at law will lie to recover moneys so appropriated, and no authority appears to support it.   None of the authorities cited support the claim that a guardian can repudiate his contracts with third persons, and get back money actually paid over for lawful purposes.   As these children were situated there can be no doubt it was desirable to have them, in such tender years, placed in family relations with kind and suitable persons, and the appropriation of funds for that purpose cannot, if honestly made, be recalled by the guardian.   We are not called on to consider cases of fraud, or cases where there is no reasonable relation between the funds and the support, or how far, even there, an action at law would lie.   In the present case there was no testimony tending to indicate that the arrangements between the guardian and the defendant were improper or excessive, and so far as the facts appear both were justified in their conduct.   And at any rate there was nothing shown which would justify this action, and the questions as to the guardian's own liability, if they arose here, which they did not, can seldom be left to a jury.

We have not considered the minor points on the reception of testimony, as they could not be material in any proper view of the case.

The judgment must be reversed and a new trial granted, although we can hardly conceive that this formal order, which is customary on exceptions, can be of any use to plaintiff.

The other Justices concurred.