*In re* HOGA'S ESTATE.

1. GUARDIAN AND WARD—ACCOUNTING—EXPENDITURES.
    3 Comp. Laws, § 8705, providing that, where a minor has property which is sufficient for his maintenance and education in a manner more expensive than his father can reasonably afford, the expense thereof may be defrayed out of the income or principal of his own property, as shall be judged reasonable, and shall be directed by the probate judge, does not require an order of record authorizing the expenditures before they are made.

2. SAME—COMPENSATION.
    The compensation due a guardian is a matter appealing to the discretion of the judge who passes upon the account.

Error to Wayne; Hosmer, J.  Submitted June 4, 1903. (Docket No. 29.)  Decided September 15, 1903.

William Look presented his final account as guardian of August Hoga, an infant. The account was disallowed in part in the probate court, and he appealed to the circuit court. From a judgment affirming the order of the probate court on verdict directed by the court, he brings error. Reversed.

*William F. Atkinson* ( *George Gartner*, of counsel ), for appellant.

*Clark, Durfee & Allor*, for appellee.

MOORE, J.    Prior to November, 1889, August Hoga, then a boy 10 or 11 years old, received an injury resulting in the loss of a leg.    His mother, as next friend, sued the railway company, and obtained a judgment against it. In November, 1889, William Look was appointed general guardian of August Hoga, and on the 11th of that month joined the father and mother (the latter also signing as next friend) in giving a receipt to the railway company in settlement of the judgment for the sum of $1,000.    It is the claim of Mr. Look that but $900 of this actually came to him; that $100 of it was retained by the mother for board and caring for the boy.    After the boy became of age, Mr. Look presented his final account for allowance in the probate court in October, 1899.    In this account he made a charge of $450 for services as guardian for the 10 years in which he had acted.    He also made a charge of between $200 and $300 paid to the parents of the minor for board, care, and clothing furnished by them; also charges aggregating about $200 for artificial legs purchased for the ward, and many other items, ranging from 50 cents, paid to a dentist, to $19, paid Mabley & Co., for two suits of clothes.    The account, as presented, showed a balance of several hundred dollars due the guardian. It is not possible to decide from the record what items were allowed and what were rejected, but a balance was found due from the guardian to the ward of $800.    An appeal was taken to the circuit court.    The trial was proceeded with before a jury, but a verdict was directed by the judge, who affirmed the action of the probate court.

It was the claim of Mr. Look that the book in which he kept a memorandum of his account with his ward had been taken from his office with other books and papers, but he produced in court receipts for most of the items. His ward, at the time of the trial a young man 23 years old, was sworn on the part of the plaintiff.    He identified many of the receipts, and testified that he got all the money for which he gave receipts; that he used it for himself; and that he needed it.    When asked if he was

not willing Mr. Look should be allowed these sums so received, upon objection of his counsel, and being advised by the judge he could answer or not, as he pleased, he declined to answer the question.

The record discloses that August Hoga was one of a family of eight or nine children. His father was a common laborer, and his mother went out nearly every day doing washings to help support the family. It also shows they had very little control over the boy, who was wayward, and gave the truant officers much trouble, and was finally sent to the Industrial School. It is the claim of Mr. Look that he not only looked after the property of the boy, but at the request of his parents looked after his person, and after his return from the Industrial School obtained employment for him, which resulted in his learning a good trade; that he was called upon to find him when he ran away, as he did frequently, and looked after purchasing for him the necessaries of life; and that, before making any of these expenditures, he talked the situation over with the judge of probate, who advised him to make the expenditures on behalf of his ward which he did make. No formal petition was presented by the guardian, asking leave to make these expenditures, and no formal order of record was made in relation thereto. The probate judge was sworn as a witness. His recollection of what conversation occurred between him and Mr. Look in relation to making expenditures on behalf of the ward was not at all clear. He remembered advising the expenditure for the artificial legs, and about advances being made to aid the parents in taking care of a land contract or mortgage affecting the home. On the cross-examination he testified, among other things:

" *Q.* In fixing up this account, you construed the statute strictly against the guardian?

"*A.* Yes, sir.

" *Q.* And it was on that ground you made your allowance, not because there was any evidence that he had not paid out the money, or anything of that kind?

"*A*. Well, I don't know as I went into that part, because I made my ruling on a strict construction of the statute. It was a question of law that I thought ought to be settled, and I thought it was a good time to settle it."

There is a very significant bit of evidence as to what occurred between the judge of probate and Mr. Look found in the first annual account filed by Mr. Look. This account was presented to the court June 10, 1891. In it the guardian had credited himself with seven items, aggregating $58.50, for the purchase and repair of artificial legs; with one item June 5, 1890, paid Mrs. Hoga for board, clothing, and maintenance of infant, $20; another like item in October, and one in December. This account was examined, and allowed as charged by the judge, July 7, 1891.

I cannot resist the conclusion from the testimony that Mr. Look understood he was authorized by the judge to make the payments which he made. He testifies that he had no knowledge of the statute referred to by the judge of probate in his testimony. It reads as follows:

"If any minor who has a father living has property which is sufficient for his maintenance and education in a manner more expensive than his father can reasonably afford, regard being had to the situation of the father's family and to all the circumstances of the case, the expenses of the education and maintenance of such minor may be defrayed out of the income or principal of his own property, in whole or in part, as shall be judged reasonable, and shall be directed by the probate court, and the charges therefor may be allowed accordingly in the settlement of the accounts of his guardian." 3 Comp. Laws, § 8705.

The circuit judge followed the judge of probate in construing this statute, and held that, as no order of record had been made authorizing the expenditures before they were made, they should not be allowed in the final account. We think this too narrow a construction to put upon the statute. It does not, in terms, require an order to be entered. In *Gott* v. *Culp*, 45 Mich., at page 273 (7 N. W. 767), it is said:

"A guardian whose ward's estate is sufficient to furnish an income that will with economy maintain and educate her suitably should not exceed it without adequate reason. But in this country, while it is prudent to obtain leave in advance, it is not necessary, if circumstances justify the excess. But the rule is always to be applied with some discretion. The guardian is justified by the authorities in looking, not merely at present and actual income, but at future and probable resources. If the income is narrow, he should also look to the future welfare and standing of his ward, which may in his eyes, as in those of a judicious parent, render it wise to secure desirable results by a sufficient outlay. In many, if not in most, cases in this country, it is not possible to secure a regular and reliable revenue, which will not at times fail or be delayed; and when the infant's property is too small for the income to furnish reasonable nurture and support, the principal must necessarily be drawn upon."

In *Mower's Appeal*, 48 Mich. 448 (12 N. W. 646), it is said a guardian's account is to be dealt with as an equitable proceeding, rather than a legal one.

In *Chubb* v. *Bradley*, 58 Mich., at page 271 (25 N. W. 186), it is said:

"As we view the record, the only real question is whether Bradley should repay any or all of the money received by him as the proceeds of the land. The court below held that, having adopted the children, defendant was compelled to support them himself, unless there was an agreement made prior to the adoption, and as a consideration for it, and that any money not paid under such a prior arrangement could be recovered back. The charge also seems to confine the amount that could be so agreed upon to the pension money and the rent of the farm, excluding the proceeds of its sale.

"There is no rule of law, in our judgment, which can sustain these holdings. If it is thought reasonable and proper, in order to give a child more advantages than the income of the estate will furnish, there is no inflexible rule which will prevent resorting to the use of the principal, and it may be true economy and duty to do so. Our statutes provide that the body of a trust fund may, in proper cases, be so applied, and in *Gott* v. *Culp*, 45 Mich. 265 (7 N. W. 767), this same doctrine was applied to the ward's estate in the hands of the guardian. If children have prop-

erty separate from that of parents, natural or adopted, although it may fairly be expected that the parents shall bring them up if they can at their own expense, in conformity with their means, yet it would be entirely unreasonable to refuse to give them better facilities than the parents themselves could afford, if parents and guardians should think it advisable for them, within reasonable limits."

In *Re Ward's Estate*, 73 Mich., at page 230 (41 N. W. 431), it is said:

"It has been held in this court that an actual and legal father may, in case the welfare of the child demands it, be allowed to have access to the child's estate to provide for its education and support more generously than he could himself afford. Guardians have been allowed to resort to the principal, as well as the income, if required for the ward's welfare. *Gott* v. *Culp*, 45 Mich. 265 (7 N. W. 767); *Moyer* v. *Fletcher*, 56 Mich. 508 (23 N. W. 198); *Chubb* v. *Bradley*, 58 Mich. 268 (25 N. W. 186)."

The statute, in terms, provides for the use, not only of the income, but of the principal, if necessary in the judgment of the probate court.

The case we have before us is a very peculiar one. The only property the ward has he obtained as damages for an injury inflicted upon him personally, which made his care a greater burden to his father and mother than it otherwise would have been, and it made him less able to help pay his way when he got old enough to help support himself and the family. It was a very proper case in which to use, in a judicious way, some of his property to supply his needs.

It is urged the circuit judge erred in not allowing the guardian compensation for services, and that the charge of $450 was a reasonable one. This is a matter which appeals to the discretion of the judge who passes upon the account. The record is not so complete as to the extent of these services as to warrant us in giving any directions in relation thereto further than to cite the case of *Gott* v. *Culp*, 45 Mich., commencing at page 274 (7 N. W. 767).

Judgment is reversed, and new trial ordered.

The other Justices concurred.