## In the matter of Calvin R. Mower's appeal.

*Probate law—Administrator's account—Appeal from allowance removable on writ of error—Foreign probate—Admission of evidence—Exclusion of testimony known equally to deceased party—Discretionary allowance.*

On appeal from the allowance of an administrator's account, the account itself and the exceptions filed thereto are a sufficient presentation of the issue, and the administrator need not file a declaration.

A residuary legatee under a will probated elsewhere need not have it probated in Michigan to entitle him to appeal from the allowance of an administrator's account by a Michigan court of probate.

The probate of a will in another State is sufficient to entitle a devisee to be heard in Michigan in any administration proceedings which are essentially *in rem* and without parties.

Administration and legal execution cannot be had in Michigan under wills probated elsewhere, until they are probated in Michigan also.

Where a proceeding in the probate court involves common-law questions and stands in the place of a suit at law, it takes the form of a common-law action, on appeal to the circuit court, and there it is proper and not unusual to provide for making up a common-law issue which will be removable to the Supreme Court on exceptions by writ of error. But the case is not necessarily to be treated in the circuit precisely as an action at law would be, as, for example, where questions are involved which ought not to go to a jury.

An appeal from the allowance of an administrator's account, or from his final accounting, is removable on writ of error and exceptions.

Appeals from interlocutory probate orders cannot take the form of a common-law action, nor can proceedings for the removal of an administrator or the appointment of a guardian.

All questions in probate proceedings that are reviewable by the Supreme Court are removable thereto on writ of error, there being no provision for appealing such proceedings to that court, as in chancery.

On error the Supreme Court reviews the action of the court below on questions of law only, but examines its conclusions on questions of fact for the purpose of determining such questions of law as arise on them.

Judgment in a case tried without a jury will not be reversed merely for the admission of improper evidence, unless it is clear that it affected the judge's conclusions.

In cases tried without a jury greater strictness in the application of the rules of evidence is required where testimony has been rejected than where it has been admitted, especially if it was oral and its exact bearing and extent and not be understood from the record.

The statutory rule that in a suit to which the heir, personal representative, etc., of a decedent is a party, the opposite party cannot testify to matters equally known to the decedent (Act 155 of 1875), does not apply to a case where the beneficiary under the will of the heir is the party on one side and the administrators of the estate, on the other.

The conclusions of a trial judge upon a question of fact must stand where the record does not show them to be manifestly wrong and so opposed to other findings as to be erroneous in law.

Special allowances to administrators for their services are within the discretion of the probate judge, and of the circuit judge, on appeal, and cannot be overruled by the Supreme Court if there were facts which fairly called for the exercise of the discretion.

Error to Kalamazoo. Submitted April 21. Decided June 14.

Appeal from allowance of administrator's accounts. Appellant brings error. Affirmed.

*Thos. R. Sherwood* for appellant.

*J. W. Breese* and *H. F. Severens* for administrators appellees. One who is not the personal representative of a decedent cannot maintain an action in regard to his estate : *Hollowell v. Cole* 25 Mich. 345; *Labar v. Nichols* 23 Mich. 310; *Jenkins v. Freyer* 4 Paige 47; *Hallett v. Hallett* 2 Paige 15; *Latting v. Latting* 4 Sandf. Ch. 31; *Deering v. Adams* 34 Me. 41; *Downing v. Porter* 9 Mass. 386; see also *Thayer v. Lane* Walk. Ch. 200; *Cullen v. O'Hara* 4 Mich. 132; *Morton v. Preston* 18 Mich. 60; *Gilkey v. Hamilton* 22 Mich. 283; a writ of error lies only in actions at law : *McCollum v. Eager* 2 How. 61; *Howes v. Buckingham* 13 Wis. 442; and is not appropriate when the question is of discretionary or equitable consideration: *Holbrook v. Cook* 5 Mich. 225; *Parker v. Copland* 4 Mich. 528; *Cross v. The People* 8 Mich. 113; *Baptist*

*Miss. Union v. Peck* 9 Mich. 445; *Conrad v. Button* 28 Mich. 365; *Brown v. Forsche* 43 Mich. 492.

COOLEY, J. The proceeding which comes under review on this record is the final accounting of Theodore P. Sheldon and John W. Breese, administrators. The accounting was first had in the probate court as the final step in the regular and ordinary administration of the estate, was taken by the appeal of Calvin R. Mower, claiming rights in the estate, to the circuit court, and after adjudication in that court has been brought by the appellant into this by writ of error. The principal questions raised upon this record are, Whether Calvin R. Mower shows any right to intervene and appeal; Whether the circuit court did not err in the reception of certain evidence; Whether certain specified payments by the administrators have not in effect been twice allowed; Whether the allowances to the administrators are not excessive, and Whether the errors, if any, in the circuit court can be reviewed and corrected in this court on writ of error.

To an understanding of the legal questions, a summary statement of the facts will be essential. These in the main are taken from the finding of facts by the circuit judge.

Horace Mower died intestate in December, 1860, leaving real and personal estate and a half interest in the copartnership assets of the banking firm of T. P. Sheldon & Co., composed of Theodore P. Sheldon and himself. He left no widow surviving him, and his sole heir at law was Lyman Mower, his father. On March 4, 1861, Theodore P. Sheldon and John W. Breese were appointed administrators. They returned an inventory in which the real estate was appraised at $1239.90, the personal at $4415.31, and the copartnership assets at $128,557.87.

Soon after the death of Horace Mower an understanding was had between Sheldon and Lyman Mower, under which Sheldon continued the copartnership business in the same manner and style, and retained the exclusive control until April 23, 1862, when an agreement for a settlement and a

division was made between them. In that agreement the partnership property was estimated at $53,637.39; but this did not include banking assets. The property was not at once divided, but it was understood that Sheldon and Lyman Mower should be tenants in common in respect to it. Sheldon was to pay the copartnership debts and continue to manage the partnership business; and Breese was left in charge of the individual estate of the intestate.

On February 5, 1864, the administrators filed an account in the probate court purporting to be a separate account of John W. Breese as administrator and of Sheldon as surviving partner and administrator; but no action was taken for the settlement of this. On March 7, 1864, a more elaborate and complete account was filed and proceedings had for its final settlement. But a question as to the jurisdiction of the probate court over the partnership effects having been raised, the judge of probate decided that he could not pass upon that portion of the purposed accounting, and the administrators thereupon withdrew it from consideration. Meantime claims against the estate of Horace Mower had, by the consent of Lyman Mower, been paid from his share of the partnership assets.

Certain disputed questions having arisen in the partnership affairs, Lyman Mower filed his bill in the Kalamazoo circuit court in chancery for their settlement. That case went to decree on May 20, 1867. No question on this accounting arises in respect to it. On October 15, 1864, the administrators filed another account in probate court in which they stated in substance that they had never received the partnership property or disposed thereof officially; but that the same remained in the hands of Sheldon. This explanation has special reference to the agreement touching partnership property, which had been made between Sheldon and Lyman Mower. The administrators charged for services on this account, $352 each, and also for commissions $118.32. No action was had for the settlement of this account.

The proceedings on this final accounting were begun

June 28, 1877. The accounting shows payments for the estate to the amount of $3715.88, besides payments made by Sheldon on copartnership debts and the payments to Lyman Mower. Previous to the presentation of this account all the individual assets of the estate had, on the petition of the administrators, been assigned and delivered to Lyman Mower.

Lyman Mower died in the State of Vermont in the fall of 1875. On this accounting Calvin R. Mower appears to oppose the allowance of the account, and presents as evidence of his right to appear what purports to be the last will and testament of Lyman Mower, probated in the State of Vermont on November 5, 1875, but never probated and allowed in this State. In the codicil to this will Calvin R. Mower is named as residuary devisee and legatee. Objections were made to his appearing, on the ground that a will not probated in this State showed no legal right. But the probate court permitted him to appear and he filed exceptions to the account, upon which he was heard. Being dissatisfied with the allowance made to the administrators, he took his appeal. When the case came into the circuit court, the court made an order directing the parties to "prepare an issue on such pleadings as they may be advised are necessary and proper in the case," and a declaration was filed by the administrators, but this seems to have been entirely unnecessary and certain questions which arise as to the admissibility of evidence under it will not be noticed. No better or further issue was needed than the account itself and the exceptions filed to it.

Exceptions were also taken on the trial before the judge without a jury to the admissibility of the testimony of the administrators in respect to matters which must have been within the knowledge of Horace Mower or of Lyman Mower in their life-time respectively; but the court received it.

For final conclusions in the case the circuit judge reached the following:

1. In so far as the estate was assigned to the heir at law

and received by him in January, 1865, there was full and final administration.

2. The administrators were entitled to and bound to administer the interest of the deceased in the copartnership of T. P. Sheldon & Co.

3. It was proper to permit the surviving partner to close up the partnership business and ascertain the exact interest of the estate therein, and it was also proper for the surviving partner to make settlement with the sole heir, when such settlement did not in any manner interfere with the rights of others.

4. The arrangement actually made did not interfere with the rights of others, but left the assets at all times subject to the control of the administrators so far as was needful for the purposes of administration, and they had a right to draw therefrom for the payment of debts and for their own compensation.

5. The administrators having made charges for their services in their account of October, 1864, are bound by those charges, and cannot now increase them for services previously rendered. But the court has authority under the statute—Comp. L. § 7441—to allow, in cases of unusual difficulty and responsibility, such further sum over the regular statutory charges as may be deemed reasonable, and it would be reasonable in this case to make an allowance for the difficulty and responsibility of attending to the interest of the estate in the copartnership assets, at the rate of $1000 per year from the appointment of administrators until the contract of April 23, 1862, amounting to $1063.30.

6. On this basis the amount found due to the administrators was $1534.75, and this sum was ordered to be paid.

I. We are of opinion that Calvin R. Mower was rightfully permitted to intervene and contest the allowance of the account. The objection made to his appearance was that his interest was not established, and he stood in respect to the litigation in the position of a stranger, until the will of Lyman Mower should be duly probated in this State. For the purposes of administration and legal execution it is

true that wills probated in other states and countries cannot be taken notice of in this State until they are probated here; Comp. L. §§ 4342 et seq.; *Wilt v. Cutler* 38 Mich. 189; but there is no good reason why such a probate should be required when the only object is to show an interest under the will for some merely incidental or collateral purpose. If Calvin R. Mower was interested in the estate of Lyman Mower under the probate of Lyman Mower's will in Vermont, he had an interest in the property of that estate, wherever situated, sufficient to entitle him to be heard in any proceedings which in their nature are proceedings without parties. In the settlement of that estate, whether by the administration in Vermont alone, or by that and one or more ancillary administrations elsewhere, all the property wherever situated must at some time be brought under judicial cognizance, and the interest of any devisee or legatee entitled to claim in Vermont under the probate already had there, is liable to be increased or diminished as the result of administrations in other jurisdictions. This is sufficient to justify a court elsewhere, in proceedings essentially *in rem*, in permitting them to appear and be heard. To require a new probate in this State for that mere purpose would be unreasonable and unnecessary expense.

II. We also think this case is properly brought to this court by writ of error. The statute provides that "in all cases not otherwise provided for any person aggrieved by any order, sentence, decree or denial of a judge of probate, may appeal therefrom to the circuit court." The jurisdiction of the probate court is such that very different proceedings requiring wholly different treatment in the circuit court may be brought up by appeal, and they must be proceeded with in that court according to their nature and proper analogies. Where the proceeding in the probate court involves common-law questions and stands in the place of a suit at law, it naturally assumes the form of a common-law suit in the circuit court, and it is very proper and not unusual to provide for the making up of a common-law issue. The trial of such an issue will not be different from

any common-law trial, and exceptions may be settled and writ of error had as in other cases. But appeals from interlocutory orders cannot take that form: *Churchill v. Burt* 32 Mich. 490; nor proceedings for the removal of an administrator: *Conrad v. Button* 28 Mich. 365; or for the appointment of a guardian: *Cameron v. Bentley* 28 Mich. 520. But in several cases appeals from the final accounting of an administrator have been proceeded in as common-law cases without difficulty or confusion. *Hull v. Grovier* 25 Mich. 428; *Brown v. Forsche* 43 Mich. 492.

But it does not follow that the case is to be tried in the circuit court exactly as an ordinary suit at law would be, and all questions disposed of in the same way. So far as the case is peculiar, it must have peculiar treatment, and if the questions are such as it is improper to submit to a jury, the right of trial by jury cannot be demanded in respect to them; and to that extent the ordinary course and practice of the court must be conformed to the case. Now in the case of administration accounts there are questions of this character, and the question which is most earnestly contested on this record is one of them. The statute provides for certain definite allowances to executors and administrators for their services as such; but it also provides that "in all cases such further allowances may be made as the judge of probate shall deem just and reasonable for any extraordinary services not required of an executor or administrator in the common course of his duty." Comp. L. § 4491. It is not contested that a settlement including such an allowance may be appealed to the circuit court; but it was never contemplated that when the case reached that court the judgment of a jury might be substituted for the discretion of the judge in respect to such allowances. The case of a guardian's accounting is strictly analogous, and we have heretofore had occasion to explain that when the case is brought into the circuit court, it is to be dealt with as an equitable proceeding rather than a legal. *Gott v. Culp* 45 Mich. 265. But as no provision is made for appealing as in chancery cases from the circuit to this Court, the undoubted

appellate authority of this Court over these as well as all others, requires for its exercise the employment of the writ of error; and there is no difficulty in reaching by means of it all questions that are reviewable.

III. On writ of error this Court reviews the action of the court below on questions of law only, but examines the conclusions of that court on questions of fact for the purpose of determining such questions of law as arise upon them. The rulings upon the admission of evidence are open for examination here if properly excepted to, but when the only errors alleged in that regard consist in receiving what it is claimed should have been excluded, the error ought to be clear to warrant a reversal, and there ought to be reason to believe the improper evidence affected the judge's conclusions. More latitude may be allowed to discretion in receiving evidence when the judge sits without a jury, and a mere possibility that his judgment may have been improperly biased by evidence not strictly admissible ought not to be conclusive reason for a reversal when substantial justice appears to have been done. Greater strictness in the application of the rules of evidence will of course be required where testimony offered has been improperly rejected, especially where it was the oral testimony of witnesses, and its exact bearing and extent cannot be seen and understood.

Much testimony was objected to on the trial in the circuit court, but we think no error was committed in receiving it. None of the rulings call for remark except those which relate to the reception of the evidence of the administrators in respect to matters which must have been equally within the knowledge of Horace Mower or Lyman Mower when living. The statute in force at the time of the trial, under which the objection to this evidence was taken, was that of 1875. Public Acts p. 184. It provided " That when a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be admitted to testify at all in

relation to matters which, if true, must have been equally within the knowledge of such deceased person."

The suit or proceeding contemplated by this statute is one in which heirs, assigns, devisees, legatees or personal representatives of a deceased person are parties on one side. In the proceeding before us the personal representatives of Horace Mower are parties on one side, and in a certain sense his heir or next of kin—the party, whoever it may be, entitled to the surplus, if any, in the hands of the administrator,—is the party on the other. But no evidence was given by the administrators, or either of them, relating to matters arising before the death of Horace Mower, which might not be stricken from the record without affecting the result. The evidence such as it was related to the partnership business and accounts, and the facts testified to were rendered unimportant by the subsequent dealings between Sheldon and Lyman Mower. But this is not a proceeding in which the personal representative, heir, assignee or devisee of Lyman Mower is a party on either side. It is not a suit which concerns the estate of Lyman Mower. It is true that Calvin R. Mower, who appears to contest the allowances, claims a standing in court by virtue of being a beneficiary under the will of Lyman Mower, but that fact only accounts for his interest in the estate of Horace Mower, and is not otherwise important. It does not make the parties concerned in Lyman Mower's estate the parties to this litigation.

We do not for these reasons consider ourselves called upon in this case to decide whether the statute above quoted is strictly applicable to the case of an accounting by an administrator, where the administrator is merely giving an account of his own doings as such. We agree that it cannot be so applied as to make the death of parties interested in the estate and the succession of others to their interests, operate to take from the administrator such right as before existed to explain under oath his official acts and doings. This is all there is occasion to say on the subject in this case.

IV. The fact that under the finding of the circuit judge

the administrators have twice had the benefit of certain allowances, we do not think is clearly made out by the record. If it is made out at all, it is only by inference and argument, and in argument something may be said on both sides. The question here is purely one of fact, and where the conclusion of the judge is not shown by the record to be manifestly wrong, and so opposed to other findings as to be erroneous in law, it must stand. Under this rule it must stand in this case.

V. With the allowances to the administrators for services we have nothing to do, provided there were facts in the case which fairly called for the exercise of judicial discretion. The probate judge or the circuit judge on appeal must determine, and not we, whether the case was so unusual as to entitle the administrators to a special allowance, and if so, to what extent. It is insisted here that the court acted wholly without authority in making an allowance for services of the administrators in settling up with the surviving partner of T. P. Sheldon & Co. We do not think so. The administrators had a duty to perform in that regard, and one of considerable responsibility. They had an important discretion to exercise, and they had authority to take a course much different from that which was actually adopted. They might, for example, have insisted on closing up the partnership business immediately. But whatever course was adopted by them the question of compensation must arise, and the probate court must judicially consider it. There was consequently no want of power in the action of the court in making the allowance it did, and we cannot overrule it.

It is proper to say that the amount allowed by the probate court was not increased, but somewhat reduced, in the circuit court.

No reason appears for disturbing the judgment, and it will be affirmed with costs, and the result certified to the circuit and probate courts.

CAMPBELL and MARSTON, JJ. concurred.