FIDELITY & DEPOSIT CO, OF MARYLAND *v*. MAILE.

1. INSURANCE — INDEMNITY BONDS — FIDELITY CONTRACT — LIABILITY.

Plaintiff, a fidelity insurance company, furnished to the employer of one Maile a bond of indemnity against loss by reason of the default of its employee. As security, defendants gave a bond to plaintiff to save it harmless against damage or loss on the fidelity obligation, in which it was provided that the contract should be void as to claims that might arise subsequent to any default, if the employer should fail to notify plaintiff, the obligor, immediately, or as soon as practicable, thereafter. Maile rendered a monthly account in which a deficiency of $27.26 appeared. He was notified of the irregularity and advised to correct it in his next report, which, however, showed an additional shortage, and plaintiff was required to reimburse the employer. In a suit on the collateral contract defendants contended that their obligation was no more extensive than that of plaintiff and that it had been released by the employer's failure to report the first shortage. *Held*, that the requirement of the fidelity bond as to notice of default did not necessitate a report of an apparent error or honest mistake, and defendants were liable on their undertaking.

2. APPEAL AND ERROR—TRIAL—CHARGE.

Apparently contradictory instructions did not prejudice appellants, against whose contention the point raised should have been determined as matter of law, instead of submitting the case to the jury.

3. SAME—SAVING QUESTIONS FOR REVIEW.

Points not sufficiently brought to the attention of the trial court will not be determined on error.

Error to Ottawa; Cross, J. Submitted July 1, 1913. (Docket No. 133.) Decided September 30, 1913.

Assumpsit by the Fidelity & Deposit Company of Maryland against Marshall Maile, James Moore, and William H. Ernst on a contract of indemnity. Judgment for plaintiff and defendants Moore and Ernst bring error. Affirmed.

*Cross, Vanderwerp, Foote & Ross* and *Walter I. Lillie*, for appellants.

*Peter J. Danhof*, for appellee.

OSTRANDER, J. The Grand Rapids, Grand Haven & Muskegon Railway Company held the bond of the plaintiff company, conditioned that certain employees of the railway company—

"Shall faithfully and honestly discharge their duties in the several capacities, and shall also faithfully and truly account for all moneys and property, and other things, which may come into their possession in their respective employments, whenever thereto required, * * * and the company hereby indemnifies the employer against all loss which the employer shall sustain, by reason of the default of any or either of the employees in the premises. * * * *"

One Marshall Maile desired to enter the employ of the railway company as one of the class of employees whose conduct was so insured by plaintiff and was required to himself give to plaintiff an indemnity

bond. This he did, with appellants Moore and Ernst as sureties. His bond recites the fact that plaintiff had executed, or had agreed to execute, a bond to the railway company in behalf of said Maile, "which bond by reference thereto herein is made to form a part hereof."

The condition of Maile's bond was that the obligors therein—

"Shall hold and keep harmless the company [the plaintiff] from and against any and all loss, damages, costs, charges and expenses * * * which the company shall, or may, at any time, sustain, incur, or be put to, for, by reason, or in consequence of the company having given and executed the said bond, or any continuations thereof. * * * "

The obligors further agree—

"To waive all notice of any defaults, or any other act or acts, giving rise to any claim under said bond of suretyship given by said company to said employer, * * * to the end and effect that we shall jointly and severally be and remain liable to the company under this bond whenever the company is liable under its said bond, * * * notwithstanding also any defenses of any kind that we might have been or be entitled to make."

This is the bond sued upon, and it was made to appear that the plaintiff had paid the railway company, on account of the default of Maile, $141.50. With their pleas the sureties gave notice that they would show in their defense that their liability was limited to the sum of $27.26, "for the reason that one of the provisions of said bond," the one given by plaintiff to the railway company, "reads as follows, viz.: 'That this bond will become void as to any claims which may arise subsequent to the occurrence of any act or default on the part of the employee, which may involve a loss for which the company is responsible hereunder, to the employer, if the em-

ployer shall fail to notify the company of the same in writing, immediately or as soon as practicable after the occurrence of such act shall have come to the knowledge of the employer'—and all claims of" the railway company which plaintiff may have paid in excess of $27.26 for alleged shortages of Maile were not recoverable under the said bond because they arose subsequently to the occurrence of an act or default of said Maile, for which plaintiff became responsible under said bond, and the employer failed to notify plaintiff of the same, in writing, immediately or as soon as practicable after the occurrence of said act had come to its knowledge.

It appeared that Maile was the agent of the railway company at Nunica from April 10, 1910, until October 3, 1910, and that, following the custom and the requirements of the company, he reported monthly to the accounting department of the road the business transacted by him. His report for July, 1910, was examined and four debit and three credit errors discovered; the balance of errors in favor of the railway company being $27.26. This was reported to Maile with the statement:

"You will on your next balance sheet debit yourself with $27.26 for balance of errors above. Balance to be carried to your debit next month."

The communication is dated September 5, 1910. In the month of October, 1910, upon an audit being made of the books kept at Nunica, it was discovered that Maile owed the company $161.50, including the item of $27.26 already referred to. His shortage for September was $133.87. Of this condition the plaintiff was notified in writing October 4, 1910. Later Maile pleaded guilty to an information which charged him with embezzling $161.50.

Appellants' principal contention is based upon the fact that the railway company did not report to the

plaintiff the errors in the July statement furnished by Maile, discovered as early, at least, as September 5, 1910. The argument is that, because of this omission or failure, the plaintiff's liability to the railway company ceased under the terms of the bond, and appellants' liability can be no greater than the legal liability of plaintiff to the railway company.

To sustain this contention it must be held that the bond given by plaintiff to the railway company required the railway company to notify plaintiff that Maile's July statement, as corrected by the accountant, showed that he should have reported and paid $27.26 more than he did report and pay. The testimony discloses, and is not disputed, that similar errors were not infrequently discovered in the reports of agents, called to their attention and corrected in the next succeeding statement; that it was supposed that Maile had simply made an error; and that dishonesty on his part was not suspected. Maile paid over all that his July account called for. His *act* in making up the account as he did and in remitting accordingly was apparently a mistake—an error. Undoubtedly, if he had not paid the amount found to be due upon the correction of his account, a claim for that amount would have arisen upon the bond. It was not, however, to be assumed that Maile was dishonest. He was entitled to opportunity to reexamine his records and to correct the corrections made by the accountant, if he could do so. The language of the condition of the bond given by plaintiff to the railway company is:

"That immediately upon, or as soon as practicable after, the discovery by the employer of any act of any employee giving rise to a claim under this bond, the employer shall give notice thereof to the company"—with the further provision that the bond will become void as to any claims arising subsequent to the occurrence of any act or default on the part of

the employee which may involve a loss for which the company is responsible, if the employer shall fail to notify the company of the same in writing immediately or as soon as practicable after the occurrence of such act shall have come to the knowledge of the employer. It will be assumed that the bonds were executed with reference to the business carried on by the railway company and the supervision which such companies usually exercise over agents. In conducting business, mistakes must unavoidably occur and be corrected after they are discovered. We do not interpret the obligation of the railway company to plaintiff as requiring apparent errors in monthly reports of agents to be immediately called to plaintiff's attention. Reading the condition of the bond and the provision for its avoidance together, a fair interpretation of its meaning is that those acts of employees, or those occurrences which do not at least imply a default, are not required to be so reported. This interpretation is in harmony with the purpose of the provision itself, which is intended to secure reasonably prompt and serious supervision of agents by employers, who many conduct business according to convenient rules but may not shut their eyes to acts and circumstances implying dishonest conduct. Further than this, and also in harmony with the interpretation given, it is stated in the bond that the plaintiff shall not be liable for any error of judgment or *bona fide* mistake, nor for any injudicious exercise of discretion on the part of the employee in and about all or any matters wherein he shall have been vested with discretion.

Error is assigned upon portions of the charge of the court which are in agreement with the conclusion just stated. It is said, in argument, that, if the instructions complained about were correct, in another portion of the charge a precisely contrary instruction was given; that therefore the jury was per-

mitted to apply either of two contradictory rules, and prejudicial error is thus made to appear. The instructions appear to be contradictory; but inasmuch as we think there was, upon this subject, no question of fact for the jury, no prejudicial error was committed.

In the brief for appellants it is urged that incompent testimony was introduced to show that a shortage greater than the sum of $27.26 existed. The argument is made in support of the first assignment of error, which is based upon an exception to a ruling which permitted a witness who had testified that he examined the books and records kept at, and relating to business done at, Nunica station to answer the question, "State to the jury what you found." The objection was that the testimony sought was incompetent, irrelevant, and immaterial. Although the reasons for the objection were stated at considerable length, they did not point out why the testimony was incompetent. And at no time was the attention of the court directed to the point that the method adopted to prove the extent of Maile's shortage was not a proper method. It is now said that the testimony was incompetent because—

"The witness was simply allowed to testify that he checked up accounts without having anything to check up from or show to the jury or the court wherein he got his items, one way or the other, from which he made up this amount of $161.50."

The books and papers referred to were admitted in evidence, without objection. It was with reference to their contents and the examination he had made of them that the witness was testifying. He was not cross-examined. The objection now made is without merit, and no proper foundation for it appears in the record.

The judgment is affirmed.

STEERE, C. J., and MOORE, McALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.