## *In re* HOFFMAN'S ESTATE.

### MICHIGAN TRUST CO. *v.* HOFFMAN.

1. APPEAL AND ERROR—REVIEW—TRIAL BY COURT.
   It is only where there is a total want of evidence, or where the finding is contrary to the undisputed evidence, that the facts found by the trial court, sitting without a jury, can be overturned on error.

2. SAME—BRIEFS.
   And assignments of error that are not discussed in the briefs of appellant will not be considered.

ON REHEARING.

3. APPEAL AND ERROR—FINDINGS OF FACT—SAVING QUESTIONS FOR REVIEW.
   On writ of error the Supreme Court reviews the action of the court below on questions of law only, but examines the conclusions of that court on questions of fact for the purpose of determining such questions of law as arise upon them.

4. SAME—EQUITY—DISTINCTIONS.
   Such proceeding in reviewing the determination of the trial court on the accounting of the trustee of a decedent's estate is not a chancery appeal or to be treated like one. The court should be informed by appellant of the errors of law relied upon.

5. TRUSTS—ACCOUNTING—EVIDENCE.
   *Held,* on a review of the question of fact whether the action of a trustee in investing the funds of a deceased minor in a flat or apartment building was ratified by the minor after he became of age and before his death, that the finding of the circuit judge was supported by the, evidence and that there was sufficient testimony supporting the judgment and determination of the court in favor of such ratification.

Appeal from Allegan; Cross, J. Submitted April 14, 1914. (Docket No. 30.) Decided July 24, 1914.

Rehearing granted December 19, 1914. Affirmed June 7, 1915.

Clayton H. Hoffman, trustee of the estate of Israel O. Hoffman, deceased, filed his final account which was allowed in probate court. The Michigan Trust Company, administrator of the estate of Roscoe C. Hoffman, one of the persons interested in said estate of Israel O. Hoffman, appealed from the final order: Bessie Hoffman, personally and as guardian of Mabel G. Hoffman, an infant, joined in the appeal. The circuit court entered a final order modifying in part the judgment of the probate court. Appellants bring error. Affirmed.

*Norris, McPherson & Harrington,* for appellants.

*A. C. Hindman* (*Myron H. Walker,* of counsel), for appellee.

PER CURIAM. Appointed by the probate court under Act No. 253, Public Acts of 1899 (4 How. Stat. [2d Ed.] § 10710 *et seq.*), trustee of an estate belonging to himself and his brother, the estate being created by the will of their father, Clayton H. Hoffman filed certain accounts in probate court at the instance of the administrator of his brother's estate and the guardian of his infant child. After a hearing in probate court, an appeal from the order entered was taken to the circuit court. In the circuit court the cause was tried by the court without a jury. A finding was requested and was made and filed. Appellants, the administrator and guardian, filed exceptions and moved to amend the finding. One additional finding was made; in other respects the motion was denied. Exceptions were filed to the refusal to amend the finding as requested. A judgment was entered, and the record is brought into this court for review upon assignments of error 33 in number.

An examination of the brief for appellants and of the errors assigned suggests the inquiry whether there is any point properly open to review in this court. Neither party presented to the trial court points of law to be passed upon as the rule permitted them to do.

It is alleged as error that the facts found do not support the judgment. It is not alleged, either in exceptions or assignments of error, that any finding is wholly unsupported by evidence. It is alleged in some of the exceptions, and restated in the assignments of error, that certain findings "are contrary to the fact and the evidence in said cause." To this allegation there is added, in some instances: "And is erroneous in law." It is assigned as error (assignments 19-29) that the court refused to amend the finding as requested, but these and most of the other assignments rest ultimately upon what the facts are found to be. No objection is made to the form or extent of the findings. Circuit Court Rule 26 reads, in part, as follows:

"(d) The finding of the facts by the court shall be treated in all respects as a special verdict, and error may be alleged that the same does not support the judgment, as on a special verdict."

It is only where there is a total want of evidence or where the finding is contrary to the undisputed evidence that the facts found by the trial court can be overturned. Upon this point the decisions of this court have been many times repeated. See notes to Stevens' Rules of Practice (2d Ed.).

The first two assignments of error are based upon rulings admitting testimony. We do not find either discussed in the brief. The assignment that the facts found do not support the judgment, which is open for our consideration, does not appear to be discussed in the brief.

We therefore affirm the judgment.

ON REHEARING.

OSTRANDER, J. In this cause an opinion was handed down *ante,* 67 (148 N. W. 268), affirming the judgment. A rehearing was granted on motion of appellant, chiefly for the reason that some members of the court were doubtful whether the form of the finding and the assignments of error precluded an examination of the question whether there was any testimony supporting the important conclusion that the deceased brother, Roscoe, approved of the investment of the trust funds in the so-called Hoffman Flats, and whether—

"With full knowledge of his rights he approved and ratified the investment of the trust funds and treated the building as belonging to him in part. * * * The investment having been ratified by Roscoe after he became of age, his representatives cannot now complain that the same was improperly made * * *."

The exceptions to the finding divide and subdivide the conclusion, as stated in the findings, making it the ground for seven exceptions, and six of them state, as reason for the exception, that the finding is contrary to the fact and the evidence in said cause and erroneous in law. One of the seven states the reason for the exception to be that "No evidence in said cause justifies the said finding." It is assigned as error— and for this purpose the subdivision of the finding already noticed is followed—that the court erred in finding (repeating portions thereof), 6th, the same being "contrary to the fact and the evidence and erroneous in law," 7th the same, 8th, "the same being erroneous in law," 9th, "the same being contrary to the fact and erroneous in law," 10th like the 6th, 11th, "Such finding being unsustainable by evidence and erroneous in law," 12th, "the said finding being contrary to the fact and erroneous in law." It is said in the brief filed in support of the motion for rehearing:

· "Where a fact found is alleged to be 'contrary to the facts and the evidence in the cause,' it can be fairly construed to mean that there is no evidence to support that finding."

This might be true in a case where counsel had, in argument, so construed the language, if the construction was necessary to save a position intended to be taken, but not clearly indicated. But counsel did not, in argument, so construe the assignments of error. On the contrary, it was insisted, and is still insisted, and the arguments proceed upon the theory, that because of the nature of the transaction which is being investigated, because it is an appeal from an accounting in probate court, the findings of fact are not conclusive as in a law case.

"The case," it is said, "is before this court as an equitable proceeding, and this court should examine the entire record as in equity cases."

This being the position assumed by counsel, it is made plain that the assignments of error were not intended to be construed otherwise than as their language imports and that it was intended that the court should examine and should weigh the evidence and find facts opposed to those found by the trial court.

The rule applied in the former opinion is adhered to. The practice is settled, and has been settled for many years. There is nothing in any opinion cited by counsel—*Gott* v. *Culp*, 45 Mich. 265, 275 (7 N. W. 767) ; *Brinsmade's Appeal*, 52 Mich. 537, 538 (18 N. W. 346) ; *Mower's Appeal*, 48 Mich. 441, 448 (12 N. W. 646) ; *Bondie* v. *Bourassa*, 46 Mich. 321, 323 (9 N. W. 433),—which amounts to an intimation that this court will review, on error, the findings of fact of the trial court, or find facts contrary to those found in the court below. On the contrary, it is said in *Mower's Appeal:*

"On writ of error this court reviews the action of the court below on questions of law only, but examines the conclusions of that court on questions of fact for the purpose of determining such questions of law as arise upon them."

This is not a chancery appeal, nor to be treated like one, and the fact that eminent counsel have, in evident good faith, asserted to the contrary is the reason for this somewhat extended reference to the subject. In all cases brought to this court upon writ of error the court should be informed of the errors of law alleged to have been committed—the precise questions involved—and to this end the rules of court have been framed. It is an error of law if a fact is found without support of evidence or contrary to undisputed evidence. And it is, of course, an error of law if a fact is lacking—is not found or found but not sustained by some evidence—which is necessary to support the judgment.

The finding which has been referred to in its entirety is as follows:

"The trustee invested $23,500 of the trust funds in the erection in the city of Grand Rapids of what is known as the 'Hoffman Flats.' This building cost about $73,000, has fifteen apartments, fourteen of which rent for $500 each per year. The vacant lot upon which this building was erected was purchased by Georgia Hoffman, who at the time was living in the homestead in the city of Allegan, while Clayton H. Hoffman and Roscoe C. Hoffman were living in the city of Grand Rapids. It was necessary to borrow some money to complete the building and for convenience and to obtain a better credit the property was conveyed by Georgia Hoffman to Clayton H. Hoffman.

"The project of building this building was discussed with Roscoe and he approved of the same and of the use of the trust funds for that purpose. The plans for the building were inspected and approved by Roscoe. He was present part of the time during the erec-

tion of the building and at his suggestion certain changes were made. He knew that the trust funds were being used to erect the building, and after he became of age he fully ratified the investment of the trust funds in the erection of the building. With full knowledge of his rights he approved and ratified the investment of the trust funds and treated the building as belonging to him in part. He expressed himself as satisfied with the investment of the trust funds in the Hoffman Flats. No loss has resulted from this investment, the building is a substantial one and is a safe investment. The investment having been ratified by Roscoe after he became of age, his representatives cannot now complain that the same was improperly made, and his estate owns a *pro rata* share in said property and has an equity in said Hoffman Flats for the amount thereof.

"Upon the argument in this case complaint was made that the record title to the property was in the name of Clayton H. Hoffman and that there was no written declaration of trust. The trustee agreed in open court to file a written declaration of trust and this has been done."

Explanatory of this, to some extent, is the following:

"Israel O. Hoffman departed this life the 19th day of August, 1901, and left surviving him a widow, Georgia Hoffman, and three sons, Clayton H., Arthur and Roscoe C. Hoffman, Roscoe C. Hoffman being a minor of the age of fourteen years, Clayton H. Hoffman was appointed one of the executors in the will, and later, September 20th, 1902, was appointed trustee of the estate, since which time he has been in the active discharge of his duties as such trustee.

"Friendly relations existed at all times and the estate was invested, managed and controlled by the consent, advice and acquiescence of all the parties interested, and the strict rule of law governing trust estates were not always followed; that is, the authority of the probate court was not secured to make certain investments.

"The trustee, Clayton H. Hoffman, is an attorney at

law, whose honesty and integrity has never been questioned. He has taken the place of his father in looking after the education, welfare and property of his minor brother, Roscoe C. Hoffman, and the best of friendly relations existed at all times between them.

"On March 31st, 1908, Roscoe C. Hoffman departed this life and left surviving him a widow, Bessie Hoffman, a minor, and also a daughter, Mabel Hoffman, four years old. The Michigan Trust Company of Grand Rapids was appointed administrator of the estate of Roscoe C. Hoffman, and Bessie Hoffman was appointed guardian of her minor child, Mabel Hoffman. Later, as such administrator and guardian, they filed a petition in the probate court for the county of Allegan, claiming that the trust estate had not been administered according to the law and the will of Israel O. Hoffman, and asking that the trustee be required to render an account of his administration of the trust estate, and that he be required to deliver to said trust company, as such administrator, the entire trust fund belonging to Roscoe C. Hoffman. An account was rendered and an order of the probate court was duly entered, directing that an amended account be filed in accordance with the terms of said order. The amended account was duly filed as directed, and afterwards this appeal was taken from said order by the said trust company, as such administrator and by Bessie Hoffman as guardian of Mabel Hoffman.

"Israel O. Hoffman by his will gave his wife, Georgia Hoffman, the sum of five thousand dollars absolutely, and a life estate in the homestead, being lot 311 of the city of Allegan, and at her death the homestead to belong to his three sons. He gave each of his three sons $5,000, to be paid to each of them when each one should arrive at the age of twenty-one years. After making this bequest he gave the balance of his estate to his three sons, to be paid to them when his youngest son should arrive at the age of twenty-two years. He directed his executors to manage, keep invested and carefully preserve his estate. By a codicil he directed that the gift of $5,000 should not be paid to Roscoe and Arthur when they arrived at the age of twenty-one years but should be paid to

them when they should arrive at the age of twenty-five years, but that they should each receive the income from the sum of $5,000 from the time they arrived at the age of twenty-one years; also that the residue of his estate should not be paid to his sons until they arrived at the age of twenty-eight years respectively. By another codicil he directed that in place of the provisions made for his son Arthur that he should receive the income and interest on the sum of $7,000, the principal to be kept invested by his executors."

An additional finding, made later, was:

"I find that on the first day of December, 1911, the interest of the estate of Roscoe C. Hoffman in the trust estate amounted to the sum of $20,459.29, which the trustee should deliver and convey to the representatives of the estate of Roscoe C. Hoffman.

"No accounting has been made of the income from the Hoffman Flats, the same having been reserved until the question of the interest of the estate of Roscoe C. Hoffman therein should be determined. A supplemental account should be made of the income and disbursements on account of the Hoffman Flats since the completion thereof, and of the trust estate since December 1st, 1911."

As is apparent, the trial court concluded that the investment of the trust funds in the Hoffman Flats was approved and consented to by Roscoe, that it was an investment made with his knowledge and consent. Upon this subject, in the brief for appellant, and in oral argument, the questions discussed are, "Was it a loan or was it an investment?" "If a real estate investment, was it ratified by Roscoe C. Hoffman?" and these are discussed as questions, first, of fact, depending upon conflicting testimony, and, second, as questions of law. It may be said that in this finding the court determined a mixed question of fact and law, and it is in this view of it that doubt arose concerning the denial of the right to review it upon this record.

It is said in the reply brief for appellant that—

"The testimony given by Ambrose Hindman on his direct examination might be a sufficient basis, if standing alone, for a finding of ratification by Roscoe after he became of age."

But, it is added, that when the direct and cross-examination of the witness are considered together—

"It establishes affirmatively and conclusively that there was no ratification by Roscoe Hoffman after he became of age."

The point in issue will be explained by a brief reference to the facts.

When the building of the Hoffman Flats was begun, in 1904, Roscoe C. Hoffman was 17 years of age. He died March 3, 1908, less than six months after attaining his majority, leaving a widow, then a minor, and one child, aged about four years. Clayton H. Hoffman had been appointed trustee of his own and his brother's joint estate (which was not to be distributed until Roscoe became 28 years of age), October 11, 1902, and in April, 1903, he filed an inventory in probate court. He filed his first annual account August 9, 1904, covering the period ending September 19, 1903. A second annual account was filed February 5, 1907, covering the period from September 20, 1903, to September 19, 1904. He filed no further account until May 16, 1911, after litigation had been begun. The later accounts purport to cover the years 1904-5, 1905-6, 1906-7, 1907-8, 1908-9, 1909-10, 1910-11. Upon hearing, with some modifications they were allowed. From the order allowing them, an appeal was taken. The trustee used in the Hoffman Flats,—in 1904, $4,000, in 1905, $7,000, in 1907, $6,000, in 1908, $3,000, in 1909, $1,000, in 1910, $2,500. The amount used after the death of Roscoe was $6,500. The trustee contends, and the court found, that this use of trust funds was an investment of them known to and approved by Roscoe while a minor and ratified by him upon and

after attaining his majority. It appears to be conceded that it was necessary to establish his ratification of this use of the funds. Upon the other hand, it is contended that ratification is a question of law—at least of law and fact—and that the law applied to the testimony conclusively establishes non-ratification. It is claimed that Roscoe was not informed of the legal effect of certain material facts, that he died without knowing the amount of funds claimed to have been invested, the true state of the title to the property or his rights in the premises. It is also further claimed that as to the money used after he died he could not have ratified its use.

The Hoffman Flats were erected upon land originally purchased in the name of Georgia A. Ely, mother of these young men. Title was later transferred to the trustee, individually, and now stands in his name. Prior to the trial of this cause, no written declaration of trust had been executed. The entire property was mortgaged to the Kent State Bank for $35,000 by Clayton H. Hoffman, and there is nothing of record to show that any one but him has any interest in the property. Mr. Ambrose Hindman, who had acted as legal adviser of the trustee, claims to have himself put several thousands of dollars into the building and an interest in the property.

Without entering now upon the subject of the manner in which the trustee kept his accounts, it may be said that from an examination of them Roscoe would not have been informed of the condition of the title or the amount of trust funds invested in the property. No statement showing the condition of the trust estate was submitted to Roscoe, nor showing what amount of trust funds had been used in the property. Nor would the accounts filed in probate court during the life of Roscoe have informed the court about the alleged investment of the funds. After a petition had

been filed in probate court in November, 1910, asking for an accounting by the trustee, he made out and executed, as maker, six promissory notes, payable to himself as trustee, purporting to be for sums out of the trust funds used in the Hoffman Flats. Each note contains the recital, "secured by a mortgage on the Hoffman, 68 Ransom Street, City." No mortgage was in fact ever executed. And if a mortgage had been executed, by himself to himself as trustee, the natural, if not necessary, inference would be that he had lent the trust funds to himself.

Many reasons move relatives to adopt a course of action with which the public and other relatives are not at all concerned. If the arrangement is mutually satisfactory to those who make it, it ought to be to everybody. In this case, it is conceivable that the brothers, without any particular examination of the legal effect of their action, may have agreed that it was desirable to build flats to be called by the family name with the trust funds and treat the property as the fund. The agreement having been made, and the trust fund having been so mutually devoted to a particular purpose, the death of one of the brothers before the building was paid for would not necessarily prevent the other from using the funds for the agreed purpose. Acting upon equal terms, with equal information, their mutual arrangement ought not to be interfered with by the courts, although it may appear that as to one or the other or both contracting parties a more profitable or better secured investment might have been made. Such an arrangement being claimed by the survivor, the courts will look to see if it was mutual, the mutuality involving substantially equal terms and equal knowledge.

The apartment house, which is said by the trustee to be in place of the fund, is a seven-story structure, of fireproof construction, for fifteen families. It has

a garage, with six stalls, in the rear.   It cost about
$75,000, and was completed in 1905, in the spring.   It
has been occupied since that time.   The mother in-
vested $3,500 in the lot, and this sum has not been
repaid to her.   The mortgagee bank advanced funds
from time to time, aggregating $35,000.   Mr. Hind-
man invested some money, and $23,500 of the trust
fund was used.   This is the testimony of the trustee.
It may be inferred, I think, that Roscoe Hoffman, who
lived three years after the building was completed,
knew that the property was not wholly paid for with
the trust funds, must have known that some money
was otherwise procured, must have understood, gen-
erally, the fact that the investment was likely to be
a continuing one, and profitable or unprofitable as the
demand for apartments and the management of the
property warranted.   It may be inferred, too, that an
unearned increment of value was considered.   These
natural, and I think necessary, inferences are supple-
mented by positive testimony to the effect that Roscoe
knew what the property cost, knew that his mother
and Hindman had contributed, that money had been
borrowed, knew what the property produced in rents,
and he once joined in putting a price upon it for an
inquiring purchaser.

Was there a mutual arrangement?   It was not
exactly a family arrangement.   The elder brother was
a trustee of the fund.   But, assuming that consent of
the other beneficiary would be sufficient answer to that
suggestion, was there a mutual arrangement?

I have said that after the death of Roscoe the trustee
executed certain notes aggregating the amount of
trust funds used in the building, payable to himself
as trustee.   He testified:

"*Q.* Now, you made these six notes which I have
shown you and which are marked 'Exhibits 9, 10, 11,
12, 13 and 14' and wrote each of them 'Secured by a

mortgage on the Hoffman, 68 Ransom Street, City,' what did you regard that as meaning?

"*A.* Simply did that as a memorandum.

"*Q.* Did you swear in probate court on the previous hearing that you regarded them as a mortgage on the Hoffman Flats?

"*A.* I did; I think I did.

"*Q.* Do you say it now?

"*A.* I have always so considered since Roscoe died, but before he died I did not consider it that way. Since he died I considered it as a second mortgage on the property.

"*Q.* Before Roscoe died you never considered that as anything of that sort, that is what your statement is?

"*A.* I considered Roscoe's part in there share and share alike.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

"When I was putting this money into the building of the Hoffman apartment property I considered Roscoe and I were joint owners in it. I did not make any division with Roscoe because the time was not ripe for it. Under the will it was to be divided when he was twenty-five and twenty-eight, and he died when he was twenty-one. I did not even divide up my own. I was nine or ten years older than Roscoe. Roscoe was born in eighty-six. I was born in seventy-six or seventy-seven."

Mr. Hindman's testimony is to the effect that from the beginning Roscoe was consulted, was interested, understood; that after he became of age he expressed himself as satisfied and pleased with the investment of the fund. It does not appear, however, that he was told or that he knew his legal rights in the premises. That is, he was not told, and did not know, that there ought to be a declaration of trust or that the title of record should be so changed as to insure him an interest in the title to the property, or that he might disaffirm upon attaining his majority.

Assuming that the question is presented by the assignments of error, it is whether, in view of the facts,

and the failure to prove that Roscoe knew his legal rights in the premises, the court below was required to find, and this court is required to hold, as matter of law, that the record fails to show an investment of the trust fund approved and ratified by Roscoe. I am impressed that we should not so hold and that the court below was right. While I do not understand the action of the trustee—never completed—in moving after the death of Roscoe as if the money had been lent instead of being invested, it seems to me to be clear that it was intended to be invested and that Roscoe understood and approved the investment both before and after coming of age. From what is made to appear, I should not expect him to disapprove upon attaining his majority, because, first, he had consented and participated in the use of the fund in this manner, and because, second, the investment was, apparently, a good one. That his legal rights should have been better evidenced of record is true, but that was a matter which, assuming the good faith of the brothers, could be attended to at any time. It has been attended to.

This conclusion is sustained, in my opinion, by our own decisions in *Quimby* v. *Uhl,* 130 Mich. 198 (89 N. W. 722); *Skelding* v. *Dean,* 141 Mich. 143 (104 N. W. 410); *In re Shailer's Estate,* 172 Mich. 600 (142 N. W. 1087), and by *Butterfield* v. *Cowing,* 112 N. Y. 486 (20 N. E. 369); *Walker* v. *Symonds,* 3 Swanst. 1. Upon all the facts found it is not out of accord with *White* v. *Sherman,* 168 Ill. 589. (48 N. E. 128), and similar cases.

BROOKE, C. J., and McALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.